UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAWN BOBCHICK and<br>GREGORY A. BOBCHICK,<br><br>      Plaintiffs,<br><br>v.<br><br>GRANGE INSURANCE COMPANY OF<br>MICHIGAN,<br><br>      Defendant. | Case No. 19-12467<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [30]**

A tragic car accident occurred in May 2015. A car containing five 17-year-old friends crashed into a guardrail at about 60 miles per hour. (*See* ECF No. 35-2, PageID.441–442, 448.) Three of the boys—Emmanuel Malaj, Michael Wells, and Jonathan Manolios—were killed. (ECF No. 35-2, PageID.440, 442.) The other two—Joseph Narra and Gregory Bobchick, Jr.—were injured. (*Id.*) The Macomb County Sheriff investigated the accident and concluded that the driver of the vehicle was Manolios. Norb Franz, *Stony Creek Crash Survivor to Police: 'Everyone's confusing me now,'* Aug. 29, 2015, https://bit.ly/2O64Xu6. (It appears that the Manolios' estate disputes this, and has some evidence suggesting that the driver was Narra. (ECF No. 30, PageID.292.))

Many—at least seven—lawsuits followed. (ECF No. 30, PageID.288; ECF No. 35, PageID.409–413.) Although Bobchick, Jr. was not the driver, his parents, Dawn Bobchick and Gregory Bobchick, Sr. ("the Bobchicks"), insured the car involved in the accident. (ECF No. 35-3, PageID.460–461.) So Narra, Malaj's estate, Wells' estate, and Manolios' estate each sued the

Bobchicks (and others). (ECF No. 30, PageID.288.) Grange Insurance Company of Michigan had issued the insurance policy to the Bobchicks. (ECF No. 35-3, PageID.460.) And pursuant to a duty-to-settle-or-defend provision in that policy, Grange provided the Bobchicks with a lawyer, Mark Roberts. (*See* ECF No. 30, PageID.311, ECF No. 35-3, PageID.476; ECF No. 35-6, PageID.522.) Roberts defended the Bobchicks in the four suits brought against them. (ECF No. 30, PageID.322.)

Three of the cases against the Bobchicks settled before the fourth, a circumstance that would ultimately lead to this lawsuit. Specifically, while the Manolios action against the Bobchicks was still pending, the Bobchicks—through their Grange-supplied attorney—settled the other three suits by paying Narra, the Malaj estate, and the Wells estate $100,000 each, for a total of $300,000. (ECF No. 15, PageID.109; *see also* ECF No. 30, PageID.317.) But under the policy, $100,000 per person and $300,000 per accident was the most Grange agreed to pay for bodily injuries. (ECF No. 35-3, PageID.461.)

Because Grange believed the three settlements exhausted the policy, Grange directed Roberts to stop representing the Bobchicks in the still-ongoing Manolios case. (*See* ECF No. 30, PageID.322.) During the hearing on Roberts' motion to withdraw, there was some indication that Bobchick, Sr. may not have fully appreciated that the other three settlements exhausted the policy limits or that he would have to pay any damages owed to the Manolios estate from his own pocket. (ECF No. 30, PageID.317.) Roberts was not allowed to withdraw his representation of the Bobchicks. (ECF No. 30, PageID.319.)

The day after the hearing, Vincent Lorelli, who represented the Manolios estate against the Bobchicks, sent a letter to Roberts. Lorelli said that the Manolios estate would settle for $350,000. (ECF No. 35-13, PageID.608.) According to the Bobchicks, Grange refused to accept this offer,

instead insisting that the case go to trial. (ECF No. 15, PageID.110.) Sometime thereafter, the Bobchicks retained a lawyer of their choosing. (ECF No. 35-6, PageID.529–530.) But Roberts remained on the case. (*See* ECF No. 35-6.)

About a week before trial, the Manolios suit settled. Under the settlement, Bobchick, Jr. and Narra (also defendants in the Manolios suit) agreed to $4 million and $5 million adverse judgments, respectively; but these judgments would be held by Lorelli's firm pending Narra's and Bobchick, Jr.'s cooperation in a bad-faith-representation lawsuit against Grange. If they cooperated, the judgments would be shredded; if they did not, then the judgments would be entered by the court. (ECF No. 35-6, PageID.523–524, 529.) As for the senior Bobchicks (Dawn and Gregory), they agreed to a $6 million judgment against them. (ECF No. 35, PageID.511, 517.) Unlike the other judgments against Narra and Bobchick, Jr., this one was entered by the court. (ECF No. 35-5, PageID.517.) But the Manolios estate promised to never collect on the $6 million judgment in exchange for a lien on anything the Bobchicks recovered in a bad-faith lawsuit against Grange. (ECF No. 35-4, PageID.512.) In addition, if the Bobchicks did not participate in that suit, the Manolios estate could void the settlement. (ECF No. 35-4, PageID.512–513.) To date, the Bobchicks have not paid anything to the Manolios estate.

This lawsuit is the suit contemplated by the Bobchicks' settlement with the Manolios estate. In particular, the Bobchicks filed this lawsuit claiming that Grange failed to offer a global settlement that included the Manolios suit, negligently refused to accept the Manolios estate's offer to settle for $350,000, and "negligently and in bad faith chose to gamble with the [Bobchicks'] financial security upon the remote chance of a [favorable] verdict." (ECF No. 15, PageID.110–111.) Lorelli, who represented the Manolios estate against the Bobchicks, now represents the Bobchicks.

3

The parties are in the middle of discovery, but the Bobchicks seek summary judgment on the issue of interest. Although arguably not pled in their complaint, the Bobchick's say, as a matter of law, they are entitled to recover from Grange pre- and post-judgment interest on the $6 million judgment entered against them in the Manolios action. (ECF No. 30, PageID.294; *see also id.* at PageID.297, 333–334.) The amount of the post-judgment interest is well over $200,000 (and accruing by the day). (ECF No. 30, PageID.333.) The Bobchicks claim about $10,000 in pre-judgment interest. (ECF No. 30, PageID.334.) (That figure appears to be incorrectly calculated. (*See id.* (using start date of May 24, 2019)).)

Before turning to the parties' summary-judgment briefing, the Court pauses to address four threshold issues, one of which is dispositive of the pending motion.

For one, the Court cannot ignore the unusual procedural posture of this case. Presumably, the Manolios estate and the Bobchicks have waived any conflicts of interest. Yet it is still notable that Lorelli now represents the Bobchicks in a suit arising from a suit in which he opposed them. Indeed, while still representing the Manolios estate, Lorelli already had turned an eye toward representing the Bobchicks: under the settlement agreement, the Bobchicks had to cooperate in a bad-faith suit against Grange and had to retain Lorelli & Lorelli. (ECF No. 35-4, PageID.513.) Presently, however, there are no conflict issues before the Court.

As another threshold issue, the Court is compelled to comment on Grange's briefing. The Bobchicks' motion for partial summary judgment is not overly complex. Yet, Grange's response brief is 32 pages (standard brief length is 25). Much more concerning though, is the use of footnotes. Grange's response brief contains 25 footnotes and some consume a half page. (*See e.g.*, ECF No. 35, PageID.418, 421.) Grange's use of footnotes appears to be an attempt to circumvent this Court's order granting it fewer excess pages than it wanted. And even if that were not the case,

4

excessive footnoting is undesirable. While an occasional trip below-the-line is not too disruptive, 25 trips, each protracted, is.

A third threshold issue pertains to the Bobchicks' complaint. Grange points out that "the First Amended Complaint does not allege a stand-alone action for interest." (ECF No. 35, PageID.415.) The Court has reviewed the complaint, and it appears that Grange is correct. But the Bobchicks could seek leave to add claims for pre- and post-judgment interest to their complaint. After all, discovery is still ongoing. And, if leave were granted, everything would be re-briefed just as it is now. Further, as will be explained, the Bobchicks are not entitled to summary judgment; so there is no prejudice to Grange in addressing the merits. Further still, the parties have told the Court that resolving this motion may help them in their efforts to try to resolve the case.

One last threshold issue before turning to the Bobchicks' motion: subject-matter jurisdiction. Under Article III of the Constitution, federal courts can only decide cases or controversies. And for there to be a case or controversy, the plaintiff's injury must not be speculative. *Saleh v. Barr*, 801 F. App'x 384, 389–90 (6th Cir. 2020) ("Ripeness . . . 'separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review.'" (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997))). Arguably, any injury to the Bobchicks from interest that has or will accrue on the Manolios judgment is speculative. True, a $6 million judgment was entered against the Bobchicks, and interest can accrue on an unpaid judgment. But there is no indication that the Manolios estate has ever attempted to collect that interest from the Bobchicks. To the contrary, under the settlement agreement, if the Bobchicks hand over any winnings in this case to the Manolios estate and cooperate in the prosecution of this case, the Manolios estate will "forever forbear any action to collect any monies to satisfy the unpaid portion of the filed Judgment that

[the Manolios estate and George Manolios] have against [the Bobchicks]." (ECF No. 35-4, PageID.512–513.) The Bobchicks are currently prosecuting this action and there is no indication that they will not continue to fully cooperate. So, arguably at least, the Manolios estate will never ask the Bobchicks to pay any type of interest. And if the Bobchicks' duty to pay interest is speculative, their injury from having to pay interest is also speculative. And that would mean this Court cannot adjudicate the Bobchicks' claims of interest. *See Saleh*, 801 F. App'x at 392 ("[M]ere exposure to a vague risk of possible harm, without more, is insufficient for Article III standing."). The Court, however, requires additional briefing to resolve the question of standing and ripeness. So rather than deny the Bobchicks' motion on jurisdictional grounds, the Court will issue a separate order regarding subject-matter jurisdiction.

Finally, to the merits. The Bobchicks seek summary judgment on a claim upon which they will have the burden of proof at trial. That means to discharge their initial burden, they must do more than point out the absence of evidence supporting the non-movant's claim. Instead, they "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (internal quotation marks omitted); Charles Alan Wright, et al., 10A Fed. Prac. & Proc. § 2727.1 (4th ed.).

*Pre-Judgment Interest.* The Bobchicks claim that their insurance policy did not address pre-judgment interest and that they are entitled to pre-judgment interest under a Michigan statute providing for that type of interest. (ECF No. 30, PageID.294, 302–03.)

But the policy does address pre-judgment interest. It says, "*Subject to the Limits of Liability* shown on the Declarations Page for Bodily Injury or Property Damage of Part A – Liability [C]overage, if you pay the premium when due, we will pay compensatory *damages* for bodily

6

injury or property *damage* for which any insured becomes legally responsible because of an auto accident." (ECF No. 35-3, PageID.476 (emphases added).) The very next sentence says, "*Damages include pre-judgment interest* awarded against the insured." (*Id.* (emphasis added).) No one disputes that the limits of liability for bodily injury is $100,000 per person and $300,000 per accident. And no one disputes that Grange already paid $300,000—the per accident limit for bodily injury. Further, it does not appear that any part of the $6 million judgment was for property damage. Taking this all together, (1) "[d]amages include pre-judgment interest," (2) those damages are subject to the limits of liability, (3) the limits of liability are $300,000 per accident (absent property damage), and (4) Grange paid $300,000 (and, to this Court's knowledge, no one sought recovery for property damage). So the policy arguably says that the Bobchicks are not entitled to pre-judgment interest.

There may be a better interpretation of the policy, including one that does not subject pre-judgment interest to the limits on liability; but the interpretation just presented is not unreasonable. So the best case for the Bobchicks is that there are two reasonable interpretations of the policy's limit on pre-judgment interest. This in turn would mean the policy is ambiguous. *Woodington v. Shokoohi*, 792 N.W.2d 63, 78 (Mich. Ct. App. 2010) ("A contract is ambiguous if it allows two or more reasonable interpretations, or if the provisions cannot be reconciled with each other."). And "[i]t is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *See Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453–54 (Mich. 2003).

True, the mere existence of a question of fact for the jury does not preclude summary judgment. Like all questions of fact, if a reasonable jury would only answer the question one way, then the Court can still grant summary judgment. But on this record, the Court cannot say that all

7

of the extrinsic evidence will favor the Bobchicks. To date, the parties have not provided any deposition transcripts or other extrinsic evidence that might resolve the ambiguity. *Klapp*, 663 N.W.2d at 454 (providing that "extrinsic evidence [such] as the parties' conduct, the statements of its representatives, and past practice" can help resolve ambiguity in a contract). So the Bobchicks are not entitled to pre-judgment interest as a matter of law.

The Bobchicks resist this result in several ways. None persuade.

The Bobchicks argue that if the policy is ambiguous as to whether Grange must pay pre-judgment interest, the Court can resolve that ambiguity by using the rule that ambiguities are to be resolved against the policy drafter, Grange. (ECF No. 30, PageID.706.) But the Michigan Supreme Court has made clear that the construe-against-the-drafter rule "is only to be applied if all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the jury unable to determine what the parties intended their contract to mean." *Klapp*, 663 N.W.2d at 455.

The Bobchicks also say that *Denham v. Bedford*, 287 N.W.2d 168 (Mich. 1980), entitles them to pre-judgment interest as a matter of law. (ECF No. 40, PageID.704–705.) There, the Michigan Supreme Court held that "the Prejudgment Interest Statute is applicable to insurance contracts and, therefore, an insurer may be obligated to pay interest in excess of the contractual limitations of an insurance policy." *Id.* at 169. The "contractual limitations" at issue were a single-accident cap of $40,000. *Id.* Further, the policy expressly provided for post-judgment interest and did not mention pre-judgment interest; by implication then, the insurer did not agree to pay pre-judgment interest. *Id.* at 170. The insurer paid the $40,000 and claimed that it did not have to pay $5,600 in pre-judgment interest. *Id.* The Michigan Supreme Court disagreed and held that under the statute, "an insurer is liable for prejudgment interest on that portion of a judgment representing

8

the policy liability of the insurer." *Id.* at 175. And perhaps even better for the Bobchicks, the Court stated, "the statutory remedy [for pre-judgment interest] becomes a part of the insurance contract, replacing any contractual provisions that are contrary." *Id.* at 172.

But that statement in *Denham* must be considered in light of the insurance policy at issue in that case, which differs from the insurance policy here. The Bobchicks' policy expressly mentions pre-judgment interest (ECF No. 35-3, PageID.476) while the *Denham* policy did not. Another significant distinction is that the policy in *Denham* included a conformity clause: "[a]ny provision of this Policy which is in conflict with the statutes of the state wherein it is issued is hereby amended to conform to such statutes." 287 N.W.2d at 172. This factored prominently in the Michigan Supreme Court's decision. The court reasoned, "Since there is an obvious conflict between the provisions of this policy which provide for postjudgment interest only and the Prejudgment Interest Statute which provides for interest from the date of filing the complaint, it may be considered that this boilerplate language amends the insurance policy to conform with the mandate of the Prejudgment Interest Statute." *Id.* Here, the Bobchicks point to no provision of the policy indicating it is "amended" to conform to any conflicting statutes. And, from this Court's review, there appears to be none. The best the Bobchicks do is to point to the choice-of-law provision: "this policy shall be governed by, and interpreted in accordance with the law of" Michigan. (ECF No. 40, PageID.705; ECF No. 35-3, PageID.504–505.) But that is a far cry from saying that the policy is amended such that a limiter on pre-judgment interest is superseded by the pre-judgment interest statute. Given that the Bobchicks' policy expressly discusses pre-judgment interest and contains no conformity provision, *Denham* does not entitle the Bobchicks to summary judgment.

9

The Bobchicks also argue that the choice-of-law language "supersedes" the language in the policy that makes pre-judgment interest part of damages. (ECF No. 40, PageID.705.)

But the choice-of-law provision and the language that (at least arguably) subjects pre-judgment interest to the liability limits can be read in harmony: Michigan law on how contracts should be interpreted governs and, to the extent that the policy is silent on an issue, Michigan common and statutory law applies. Here the policy is not silent on pre-judgment interest. And, apart from *Denham*, the Bobchicks have not cited any authority suggesting that parties cannot contract around the pre-judgment interest statute.

Finally, the Bobchicks also point to policy language stating that in addition to the limits on liability, Grange would pay "[i]nterest accruing after a judgment is entered in any suit [it] defend[s]." (ECF No. 40, PageID.705–706; ECF No. 35-3, PageID.476.) In the Bobchicks' view, this includes pre-judgment interest because "interest can only be added after a judgment is entered." (ECF No. 40, PageID.706.)

The Bobchicks' interpretation is not faithful to the ordinary meaning of the words "accruing after." And the interpretation is contrary to Michigan Supreme Court precedent: "While the exact amount of *pre* judgment interest due is not ascertainable until after the amount of the judgment has been determined, it cannot be said that *pre* judgment interest 'accrues after entry of the judgment.'" *Matich v. Modern Research Corp.*, 420 N.W.2d 67, 75 (Mich. 1988).

In short, the Bobchicks are not entitled to summary-judgment on their claim for pre-judgment interest.

*Post-Judgment Interest*. For their claim of over $200,000 in post-judgment interest, the Bobchicks do not rely on a Michigan statute but instead focus on the policy language. In particular, the Bobchicks rely on the following language: "Supplementary Payments[.] In addition to our limit

10

of liability, at our insured's request, we will pay on behalf of an insured: . . . Interest accruing after a judgment is entered in any suit we defend." (ECF No. 35-3, PageID.476.)

Read literally, the Bobchicks have a point. Even though Grange paid the per-person and per-accident limits for bodily injuries, the language says "[i]n addition to our limit of liability." So the plain language removes "interest accruing after a judgment" from the $100,000 and $300,000 caps. As for the language, "after a judgment is entered in any suit we defend," a judgment was entered in the Manolios suit and Grange (via Roberts) defended that suit. So, under the quoted supplementary-payment provision, it appears that the Bobchicks would be entitled to summary judgment on their claim for post-judgment interest.

But there is a bit more to the supplementary-payment provision, and the bit more cuts against the Bobchicks' interpretation of the policy. More completely, the provision says, "In addition to our limit of liability, at our insured's request, we will pay on behalf of an insured: . . . Interest accruing after a judgment is entered in any suit we defend. *Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage*." (ECF No. 35-3, PageID.476 (emphasis added).)

The Bobchicks think that the extra language changes nothing. They say that Grange has never offered to pay any part of the $6 million judgment, let alone part of the judgment up to the policy limits of $100,000 or $300,000. (ECF No. 30, PageID.296.) So, in their view, Grange's duty to pay interest has not ended.

But consider the practical ramifications of the Bobchicks' position. If the Bobchicks' read of the policy is right, then the only way Grange can stop interest from accruing on the $6 million judgment is to offer to pay at least $100,000 (the per-person limit) of that judgment. But Grange already paid $300,000 to settle other suits stemming from the May 2015 accident, and the policy

11

provides that the limit on liability for bodily injuries stemming from one accident is $300,000. (ECF No. 35-3, PageID.461.) In other words, contrary to the $300,000 per-accident limit, the Bobchicks think that the policy requires Grange to pay a total of $400,000 to stop post-judgment interest from accruing. And what if there were yet another unpaid judgment? Would Grange have to pay $500,000 to stop interest from accruing? Because the Bobchicks' interpretation effectively nullifies the limits on liability, a reasonable jury could reject their interpretation. Or, stated differently, one reasonable read of the policy is that Grange does not have to pay post-judgment interest. So the question must be submitted to a jury. *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453–54 (Mich. 2003).

*Unfair Trade Practices Act*. Lastly, the Bobchicks also seek interest on interest. In particular they say that Michigan's Unfair Trade Practices Act entitles them to interest on the pre- and post-judgment interest. But the Bobchicks are not entitled to summary judgment on their pre- and post-judgment interests claims. So they are not entitled to summary judgment on their claim under the Unfair Trade Practices Act, either.

\* \* \*

For the reasons given, the Court orders as follows. The Bobchicks' motion for summary judgment is DENIED. If the Bobchicks want to pursue their claim for pre- or post-judgment any further, they must seek leave to amend their complaint (or obtain Grange's consent).

SO ORDERED.

Dated: March 11, 2021

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE